IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ASTRAZENECA AB and          :
ASTRAZENECA                 :
PHARMACEUTICALS LP,         :
                            :
            Plaintiffs,     :
                            :          Civil Action No. 18-1562-CFC
        v.                  :
                            :
MYLAN PHARMACEUTICALS       :
INC. and 3M COMPANY         :
                            :
                            :
            Defendants.     :

_____

Michael P. Kelly, Daniel M. Silver, Alexandra M. Joyce, MCCARTER &
ENGLISH, LLP, Wilmington, Delaware; Gary M. Rubman, Douglas A. Behrens,
Anna Q. Han, COVINGTON & BURLINGTON LLP, Washington, District of
Columbia

    *Counsel for Plaintiffs*

Frederick L. Cottrell, III, Jason J. Rawnsley, Alexandra M. Ewing, RICHARDS,
LAYTON & FINGER, P.A., Wilmington, Delaware; Shannon M. Bloodworth,
PERKINS COIE LLP, Washington, District of Columbia; David L. Anstaett,
Emily J. Greb, PERKINS COIE LLP, Madison Wisconsin

    *Counsel for Defendants*

## **MEMORANDUM OPINION**

October 18, 2019
Wilmington, Delaware

_____

COLM F. CONNOLLY,
UNITED STATES DISTRICT JUDGE

Plaintiffs AstraZeneca AB and AstraZeneca Pharmaceuticals, LP

(collectively, "AstraZeneca") have sued Mylan Pharmaceuticals Inc. ("Mylan")

and 3M Company for patent infringement.  Before me is Mylan's motion to

dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue pursuant to 28 U.S.C. §

1400(b), D.I. 19, and 3M's motion to transfer this case to the Northern District of

West Virginia pursuant to 28 U.S.C. § 1404(a), or in the alternative, to dismiss the

claims against it under Fed. R. Civ. P. 12(b)(7) for failure to join a party under Fed.

R. Civ. P. 19, D.I. 32.  The motions have been fully briefed.  D.I. 20; D.I. 33; D.I.

39; D.I. 49.  Oral argument was held on October 10, 2019.  For the reasons

discussed below, I will deny Mylan's motion to dismiss and grant-in-part and

deny-in-part 3M's motion to dismiss or transfer venue.

## I.   BACKGROUND[1]

AstraZeneca initiated this Hatch-Waxman action on October 11, 2018,

accusing Mylan, Mylan Laboratories Limited, Mylan Inc., and Mylan N.V. of

infringing United States Patent Nos. 7,759,328 (the "#328 patent"), 8,143,239 (the

_____

[1] In considering a motion to dismiss for improper venue, I "accept as true all of the
allegations in the complaint, unless those allegations are contradicted by the
defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158
n.1 (3d Cir. 2012).

"#239 patent"), 8,575,137 (the "#137 patent"), and 7,967,011 (the #011 patent").
*See* D.I. 1, ¶ 1.  On December 19, 2018, AstraZeneca filed its First Amended
Complaint, in which it added 3M as a defendant to the litigation.  D.I. 13, ¶ 5.  On
March 14, 2019, Mylan Laboratories Limited, Mylan Inc., and Mylan N.V. were
dismissed as parties by stipulation and order.  D.I. 46.  On June 4, 2019,
AstraZeneca filed its Second Amended Complaint, in which it added an additional
patent to the lawsuit, United States Patent No. 10,166,247 (the "#247 patent").  *See*
D.I. 71, ¶ 1.  The Second Amended Complaint is the operative complaint in this
lawsuit and the pleading to which Defendants' pending motions apply.  D.I. 68, ¶¶
(c)–(d).

AstraZeneca Pharmaceuticals LP is the holder of New Drug Application
("NDA") No. 021929, which covers its Symbicort Inhalation Aerosol product.
D.I. 71, ¶ 8.  Symbicort is administered through an inhaler and is "a prescription
drug approved for the treatment of asthma . . . and maintenance treatment in
patients with chronic obstructive pulmonary disease ('COPD') including bronchitis
and emphysema."  *Id.*  Symbicort contains budesonide and formoterol fumarate
dihydrate as its two active ingredients and is available in two dosages: 80 mcg
budesonide/4.5 mcg formoterol fumarate dihydrate and 160 mcg budesonide/4.5
mcg formoterol fumarate dihydrate.  *Id.*

Mylan is the sole holder of Abbreviated New Drug Application ("ANDA") No. 211699 and it seeks "FDA approval for a generic version of budesonide and formoterol fumarate dihydrate inhalation aerosol, 160/4.5 mcg and 80/4.5 mcg." D.I. 20 at 2 (citing D.I. 21, ¶¶ 25–26); *see also* D.I. 71, ¶ 21. 3M Drug Delivery System, a division of 3M, submitted the ANDA in June 2018. D.I. 21, ¶ 27. 3M also submitted the Paragraph IV certifications against the asserted patents. D.I. 41, Ex. B. On August 15, 2018, the FDA sent 3M a Paragraph IV acknowledgment letter and instructed 3M to provide notice of 3M's Paragraph IV certification to AstraZeneca. *Id.*, Ex. C at 1, 2. On August 17, 2018, 3M allegedly transferred the ANDA to Mylan. D.I. 21, ¶ 28. On August 30, 2018, Mylan notified AstraZeneca of the ANDA and its intent to manufacture and sell a generic version of Symbicort. D.I. 41, Ex. J at 2. In the notice letter, Mylan stated that "Mylan submitted to the FDA an ANDA." *Id.*, Ex. J at 3. According to a declaration submitted by Mylan and not challenged by AstraZeneca, "3M will manufacture the ANDA product for [Mylan]" but "will not be involved in any marketing, promotion, distribution or sale of Mylan's ANDA product." D.I. 21, ¶ 29.

3

## II.  DISCUSSION

### A.  Mylan's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3)

Mylan moves to dismiss the case against it under Federal Rule of Civil

Procedure 12(b)(3) for improper venue under § 1400(b).  D.I. 19.  Venue in patent

infringement cases is controlled exclusively by 28 U.S.C. § 1400(b).  *See TC*

*Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518 (2017).

Section 1400(b) provides that a patent infringement case "may be brought in the

judicial district where the defendant resides, or where the defendant has committed

acts of infringement and has a regular and established place of business."  28

U.S.C. § 1400(b).  Like its predecessor statutes, § 1400(b) "is intended to be

restrictive of venue in patent cases compared with the broad general venue

provision."  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018).

"[U]pon motion by the Defendant challenging venue in a patent case, the

Plaintiff bears the burden of establishing proper venue."  *Id.* at 1013.  In

considering a motion to dismiss for improper venue, courts "accept as true all of

the allegations in the complaint, unless those allegations are contradicted by the

defendants' affidavits."  *Bockman*, 459 F. App'x at 158 n.1.  Courts may also

consider affidavits submitted by plaintiffs.  *See Bristol-Myers Squibb Co. v.*

*Aurobindo Pharm USA Inc.*, 2018 WL 5109836, at *2 (D. Del. Oct. 18, 2018).  If a

4

court determines that venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 272 (D. Del. 2010) ("A court may sua sponte cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interest of justice." (internal quotation marks and citations omitted)).

Here, it is undisputed that Mylan is a West Virginia corporation, *see* D.I. 71, ¶ 4; D.I. 21, ¶ 3, and, thus, does not "reside" in Delaware under § 1400(b). *See TC Heartland*, 137 S. Ct. at 1521 ("[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."). It is also undisputed that Mylan does not have a regular and established place of business in Delaware. *See* D.I. 49 at 2.[2] AstraZeneca argues, however, that venue is undisputedly proper here for 3M because 3M is a Delaware corporation and therefore "venue is also proper as to [Mylan]" for three reasons: (1) Mylan is 3M's successor-in-interest in the ANDA, D.I. 39 at 11–14; (2) Mylan is 3M's agent, *id.* at 14–16; and (3) Mylan and 3M have attempted to "manipulate venue" by devising a "scheme" through

---

[2] AstraZeneca did not make any argument regarding 28 U.S.C. § 1400(b)'s second prong. *See generally* D.I. 39.

5

which they "sought to deprive AstraZeneca of the ability to sue the party who

submitted the ANDA in the district where it and AstraZeneca reside," *id.* at 17–18.

AstraZeneca further contends that "[g]iven the unique nature of Hatch-Waxman

litigation, venue for these actions should be governed by [§]1391, as well as

[§]1400(b)," and that venue is proper over Mylan under § 1391. D.I. 39 at 19. I

find that none of AstraZeneca's arguments support venue in Delaware for Mylan.

### 1. Mylan's Status as 3M's Successor-In-Interest in the ANDA Does Not Create Proper Venue in Delaware

First, AstraZeneca contends that because venue is proper in Delaware for

3M under 28 U.S.C. § 1400(b) as a Delaware corporation, venue is proper in

Delaware for Mylan as 3M's successor-in-interest in ANDA No. 211699. D.I. 39

at 11. Under Delaware law, with rare exceptions not applicable here, a purchaser

of assets is "liable only for liabilities it expressly assumes." *Spring Real Estate,*

*LLC v. Echo/RT Holdings, LLC*, 2013 WL 6916277, at *4 (Del. Ch. Dec. 21, 2013)

(internal quotation marks omitted). Here, it is undisputed that Mylan assumed

3M's responsibilities and liabilities associated with the ANDA upon its transfer

from 3M to Mylan. *See* D.I. 39 at 11–12 ("[Mylan] expressly assumed liability for

3M's submission of the ANDA."); D.I. 49 at 3 ("[Mylan] accepted the

responsibility to perform 3M's duties under the ANDA . . . ."). Mylan did not,

however, assume 3M's place of residency in doing so.

6

AstraZeneca cites six cases in support of its theory that 3M's actions in filing the ANDA create venue over Mylan.  *See* D.I. 39 at 12–14.  But only two of the cases considered venue: *Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.*, 757 F.2d 1256 (Fed. Cir. 1985) and *Haeberle v. Texas International Airlines*, 497 F. Supp. 1294 (E.D. Pa. 1980); and neither of those cases supports AstraZeneca's assertion that venue over Mylan is proper here.[3]

*Minnesota Mining* involved the total acquisition of the predecessor corporation during the pendency of the litigation such that the predecessor no longer existed and the successor "became in effect a new corporate name for the same corporate body."  757 F.2d at 1262.  Here, as both parties acknowledge, Mylan only assumed the responsibilities and liabilities of 3M associated with

---

[3] The other cases cited by AstraZeneca are inapposite.  *Spring Real Estate*, 2013 WL 6916277, at *4 and *AJZN, Inc. v. Yu*, 2015 WL 331937, at *15 (D. Del. Jan. 26, 2015) involved whether a successor-in-interest assumed its predecessor's liabilities.  *Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 532 (1983) and *City of Richmond v. Madison Management Corp.*, 918 F.2d 438, 454–44 (4th Cir. 1990) considered questions regarding personal jurisdiction, not venue.  Although AstraZeneca urges me to treat personal jurisdiction and venue in the same way, the Federal Circuit has cautioned that courts should "be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases."  *In re Cray Inc.*, 871 F.3d 1355, 1361 (2017).  AstraZeneca explicitly acknowledged in the related West Virginia litigation that "[t]he distinction between jurisdictional and venue challenges is important."  *AstraZeneca AB, et al. v. Mylan Pharms. Inc.*, No. 18-193, D.I. 38-1 (N.D. W. Va. Feb. 27, 2019).

ANDA No. 211699.  *See* D.I. 39 at 11–12; D.I. 49 at 3–4.  AstraZeneca has not

alleged that Mylan acquired 3M's entire business, such that 3M no longer exists

and has been subsumed by Mylan.

AstraZeneca's reliance on *Haeberle* is also unavailing.  In *Haeberle*, the

court found venue to be proper under 28 U.S.C. § 1391's "prescription of venue in

the district where 'the claim arose,'" as the successor-in-interest had sent payments

under the contracts-at-issue into the venue and the venue "was assigned as the

place where the principal matter of performance in question . . . was to have

occurred."  497 F. Supp. at 1301–02.  Here, however, AstraZeneca asks me to find

that venue is proper based on the residence of 3M, not where the alleged claims

arose.  *Haeberle*, thus, is also inapplicable, and AstraZeneca has not shown that

Mylan's status as 3M's successor-in-interest to the ANDA creates proper venue in

Delaware for Mylan.

### 2.   Venue in Delaware for Mylan Has Not Been Established Under a Pure Agency Theory

Second, AstraZeneca contends that venue is proper in Delaware for Mylan

under a "pure agency theory" because "3M and [Mylan] are 'intimately

connected,' creating a limited agency relationship for purposes of marketing a

generic version of Symbicort."  D.I. 39 at 14, 15.  In support of this argument,

AstraZeneca cites case law allegedly showing that an agency relationship can

8

require imputing venue from the principal to the agent.  D.I. 39 at 14–15.  And it asserts that under Defendants' Joint Development and Marketing Agreement, 3M retains most of the decision-making authority, leaving Mylan to act as 3M's agent for purposes of marketing the ANDA product."  D.I. 39 at 16.  AstraZeneca's pure agency argument, however, fails because AstraZeneca has not established that I should impute the residency of 3M to Mylan based on an agency relationship between 3M and Mylan.

With one exception, the cases AstraZeneca relies on do not involve pure agency theory but instead address theories of "piercing the corporate veil" or "alter ego."  For example, AstraZeneca cites *Bristol-Myers Squibb*, but that case does not contain any discussion of agency.  *See generally* 2018 WL 5109836.  Instead, it found that the residence of one entity is imputed to another entity "where there is an alter ego relationship or piercing of the corporate veil," such that "the law allows the Court to treat one entity *as if* it were a resident in a second district."  *Id.* at *3 (emphasis in original).  AstraZeneca also cites *Minnesota Mining*, but that case involved "piercing the corporate veil" as well, not pure agency theory.[4]  757 F.2d at 1265.

---

[4] AstraZeneca highlights *Minnesota Mining*'s reliance on *Leach Co. v. General Sani-Can Manufacturing Corp.*, 393 F.2d 183 (7th Cir. 1968), but that case also involved corporate separateness, not pure agency theory.

Cases involving theories of "piercing the corporate veil" or "alter ego" do not support AstraZeneca's agency argument.  Those theories are inconsistent with a pure agency argument because those theories require finding that "the two [entities] actually functioned as a single entity and should be treated as such," *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001), while an agency relationship can only exist between two distinct entities—i.e., a principal and an agent, *see Fisher v. Townsends, Inc.*, 695 A.2d 53, 57 (Del. 1997).

Furthermore, 3M and Mylan's alleged agency relationship would not require imputing 3M's Delaware residency to Mylan for venue purposes.  "[F]inding an agency relationship simply permits a court to attribute specific acts by the agent to the principal; the agent and principal are still separate corporations." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1464 (D. Del. 1991). Because corporate boundaries are maintained, one entity's "*status*" as a corporation of one state is not imputed to the other.  *Id.*  Thus, even if an agency relationship existed between 3M and Mylan, both parties would maintain their separate corporate identities, meaning Mylan would maintain its status as a West Virginia corporation without ties to Delaware.

The only case relied upon by AstraZeneca in support of its "pure agency theory" that actually considered the issue of venue in the context of an agency

relationship is *Pfizer Inc. v. Mylan Inc.*, 201 F. Supp. 3d 483, 490–91 (D. Del. 2016). *Pfzier*, however, does not apply here because its holding was based on the standard for venue that existed before *TC Heartland*. In *Pfizer*, the Federal Circuit found that personal jurisdiction could exist over a defendant based on its agency relationship with another entity. *Id.* at 490–91. And thus, it also found that venue could be proper over a defendant based on an agency relationship because under *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) "venue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced." *Id.* at 490–91 (internal quotation marks omitted). In *TC Heartland*, however, the Supreme Court "clearly (if not quite expressly) rejected" *VE Holding*'s rule that venue includes any district where personal jurisdiction exists over the defendant. *In re Micron Tech., Inc.*, 875 F.3d 1091, 1099 (Fed. Cir. 2017). Given the Supreme Court's rejection of the standard applied in *Pfizer*, that case does not permit me to impute 3M's residency to Mylan even if I did find that an agency relationship existed between 3M and Mylan.[5]

---

[5] To be clear, I have not made a determination regarding the existence of an agency relationship between 3M and Mylan. Because I am not persuaded that the case law permits 3M's residency to be imputed to Mylan under a pure agency theory for the purpose of venue, I need not reach the issue of whether Defendants are in an agency relationship.

11

### 3.   Mylan and 3M Have Not Manipulated Venue in Anticipation of Litigation

Third, AstraZeneca contends that venue is proper as to Mylan because 3M and Mylan engaged in "prohibited activit[ies] . . . designed to manipulate venue in anticipation of litigation." D.I. 39 at 18 (internal quotation marks omitted). Specifically, AstraZeneca alleges that 3M's transfer of ANDA No. 211699 to Mylan before giving AstraZeneca notice of the Paragraph IV certification and Mylan's holding itself out in the Paragraph IV notice as the party that filed ANDA No. 211699 constituted a "scheme" to manipulate venue. *Id.* AstraZeneca argues that "3M and Mylan's scheme sought to deprive AstraZeneca of the ability to sue the party [that] submitted the ANDA in the district where it and AstraZeneca reside." *Id.*

Although Mylan's communications with AstraZeneca can reasonably be described as deceptive and even manipulative insofar as they hid from AstraZeneca the role 3M played in the ANDA process, Mylan did nothing that deprived AstraZeneca of the ability to sue 3M—the party that submitted the ANDA—in Delaware. Indeed, AstraZeneca has sued 3M in Delaware. Accordingly, I reject AstraZeneca's contention that Mylan's alleged manipulation of venue allows this Court to exercise venue over Mylan.

### 4. Because This Case Contains Claims for Patent Infringement, the General Venue Statue, 28 U.S.C. § 1391, Does Not Apply

Fourth, and finally, AstraZeneca asserts that given "the unique nature" of Hatch-Waxman litigation, venue is proper under the general venue statute of 28 U.S.C. § 1391 in addition to § 1400(b). *See* D.I. 39 at 19. Chief Judge Stark rejected this very argument in *Bristol-Myers Squibb*, 2018 WL 5109836, at \*5–\*6. For the cogent reasons stated in that opinion, I agree that this case "is incontestably a 'civil action for patent infringement' [and therefore] venue is governed solely and exclusively by § 1400(b)." *Id.* at \*6. As discussed above, venue is improper for Mylan in Delaware under § 1400(b).

### 5. In Lieu of Dismissal, I Will Transfer This Case

Given that venue is improper in Delaware for Mylan, I am left with the decision of whether to dismiss the claims against Mylan or, "if it be in the interest of justice, transfer [the claims] to any district or division in which [they] could have been brought." 28 U.S.C. § 1406(a). "Dismissal is considered to be a harsh remedy . . . and transfer of venue to another district in which the action could originally have been brought, is the preferred remedy." *Best Med. Int'l, Inc. v. Elekta AB*, 2019 WL 3304686, at \*2 (D. Del. July 23, 2019) (internal quotation marks and citation omitted). Thus, in lieu of dismissal, I will transfer

13

AstraZeneca's claims against Mylan to the Northern District of West Virginia. Because Mylan is a West Virginia corporation and has its headquarters in Morgantown, West Virginia, *see* D.I. 71, ¶ 4; D.I. 21, ¶ 3, the Northern District of West Virginia satisfies the first prong of 28 U.S.C. § 1400(b), making it a district in which AstraZeneca's claims against Mylan "could have been brought" under 28 U.S.C. § 1406(a).

Although neither Mylan nor AstraZeneca address in their papers whether the claims against Mylan should be transferred to the Northern District in lieu of dismissal, "a court may sua sponte cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a), 1631, when it is in the interest of justice." *Belden Techs.*, 829 F. Supp. 2d at 272; *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of s 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by . . . 'time-consuming and justice-defeating technicalities.'"). Given the progression of this case to date, it is in the interest of justice to transfer, rather than dismiss, the claims against Mylan. Fact discovery is well under way, *see, e.g.*, D.I. 60, D.I. 69, D.I. 72, D.I. 84; the parties have filed their joint claim

14

construction chart, *see* D.I. 87; and AstraZeneca has served its opening claim construction brief, *see* D.I. 103.  Although AstraZeneca filed an identical "back-up" action against Mylan in the Northern District of West Virginia, that case has been stayed since April 5, 2019 pending a decision on Mylan's instant motion in this Court.  *See AstraZeneca AB, et al. v. Mylan Pharm. Inc.*, C.A. No. 18-193, D.I. 57 at 2 (N.D. W. Va. Apr. 5, 2019).  Moreover, prior to the stay, the West Virginia case was in its early stages and had not advanced passed the filing of a Rule 12(b) motion, which was later mooted by stipulation, *see id.*, D.I. 44, and the filing of Mylan's answer, *see id.*, D.I. 26.  Thus, instead of requiring the parties and the West Virginia court to expend additional resources to litigate this case essentially from the beginning, it is in the interest of justice that the claims against Mylan be transferred.  Therefore, Mylan's motion to dismiss is denied and the claims against it will be transferred.

  As an additional matter, because this case involves multiple defendants and because I find dismissal of the claims against Mylan inappropriate, I am faced with the task of determining whether to transfer the case in its entirety to the Northern District of West Virginia or to sever and transfer the claims against Mylan only. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994). Section § 1404(a) permits courts, "[f]or the convenience of parties and witnesses,

in the interest of justice," to transfer claims "to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). AstraZeneca and 3M have consented to the transfer of the claims against 3M to the Northern District should venue be improper for Mylan in Delaware. *See* D.I. 100 at 1; D.I. 101 at 1. As will be discussed below, for the convenience of the parties, it is in the interest of justice that the claims against 3M be transferred to the Northern District.[6] Therefore, this case may be transferred in its entirety to the Northern District of West Virginia.

### B. 3M's Motion to Transfer to Northern District of West Virginia

3M moves pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of West Virginia. D.I. 32. Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As noted above, AstraZeneca and 3M have

---

[6] Although AstraZeneca and 3M have consented to transfer, "transfer must be justified under the factors applicable to [§] 1404(a) motions." 15 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3845 (4th ed. 2008, as updated August 2019). "In other words, consent of the parties is not the basis for ordering transfer, but merely expands the range of possible transferee courts if a court determines that transfer is appropriate for the convenience of the parties and witnesses and in the interest of justice." *Id.*

16

consented to the transfer of the claims against 3M to the Northern District of West Virginia should venue be improper for Mylan in Delaware. *See* D.I. 100 at 1; D.I. 101 at 1. Thus, the claims against 3M may be transferred to the Northern District. *See* 28 U.S.C. § 1404(a).

As the party seeking the transfer to that district, 3M has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis added) (internal quotation marks and citation omitted).

The proper interests to be weighed in deciding whether to transfer a case under § 1404(a) are not limited to the three factors recited in the statute (i.e., the convenience of the parties, the convenience of the witnesses, and the interests of justice). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the court in *Jumara* identified 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience

17

> of the parties as indicated by their relative physical and
> financial condition; [5] the convenience of the
> witnesses—but only to the extent that the witnesses may
> actually be unavailable for trial in one of the fora; and [6]
> the location of books and records (similarly limited to the
> extent that the files could not be produced in the
> alternative forum).

*Id.* (internal citations omitted).  The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical
> considerations that could make the trial easy, expeditious,
> or inexpensive; [9] the relative administrative difficulty
> in the two fora resulting from court congestion; [10] the
> local interest in deciding local controversies at home;
> [11] the public policies of the fora; and [12] the
> familiarity of the trial judge with the applicable state law
> in diversity cases.

*Id.* at 879–80 (internal citations omitted).  As the parties have not identified

relevant factors beyond these 12 interests, I will balance the *Jumara* factors in

deciding whether to exercise the discretion afforded me by § 1404(a).

## 1.   **Plaintiff's Forum Preference**

This factor usually weighs against transfer.  In *Shutte*, the Third Circuit held

that "[i]t is black letter law that a plaintiff's choice of a proper forum is a

paramount consideration in any determination of a transfer request" brought

pursuant to § 1404(a), and that this choice "should not be lightly disturbed."  431

F.2d at 25 (internal quotation marks and citation omitted).  *Jumara* cited *Shutte*

18

favorably and reiterated *Shutte*'s admonition that "the plaintiff's choice of venue

should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks

and citation omitted).  This rationale applies regardless of a plaintiff's ties to a

forum or its reasons for choosing a forum: "Assuming jurisdiction and proper

venue, weight is given to plaintiff's choice because it is plaintiff's choice and a

strong showing under the statutory criteria in favor of another forum is then

required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food,*

*Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975); *see also VLSI Tech. LLC v. Intel*

*Corp.*, 2018 WL 5342650, at *2–*6 (D. Del. Oct. 29, 2018) (explaining that a

plaintiff's choice is given paramount consideration regardless of its connections or

motives for choosing a forum).

This case, however, presents a situation where jurisdiction and proper venue

cannot be assumed.  AstraZeneca's original forum preference is a district in which

the court cannot adjudicate the claims against both Defendants because of the lack

of proper venue for Mylan in Delaware. *See ANI Pharm., Inc. v. Method Pharms.,*

*LLC*, 2019 WL 176339, at *7–*8 (D. Del. Jan. 11, 2019) (acknowledging that

plaintiff's forum choice is usually given paramount consideration but finding that

the factor weighed in favor of transfer because the court lacked jurisdiction over at

least one defendant).

19

Given that AstraZeneca has consented to the transfer of the claims against 3M to the Northern District of West Virginia, *see* D.I. 100 at 1, thereby permitting it to prosecute all of its claims involving the relevant ANDA in one action, I will treat this factor as neutral.

### 2.   Defendant's Forum Preference

This factor favors transfer.

### 3.   Whether the Claims Arose Elsewhere

The parties agree that this factor is either neutral or should be afforded only little weight. *See* D.I. 33 at 5; D.I. 39 at 27. I agree. Hatch-Waxman cases "are based primarily on an act of constructive infringement—namely, the submission to the FDA of an application to sell a generic version of a drug prior to the expiration of the relevant patents." *Abbott Labs. v. Roxane Labs., Inc.*, 2013 WL 2322770, at *19 (D. Del. May 28, 2013). Courts, thus, "look to the forum where the ANDA submission itself was prepared and submitted . . . or to where the ANDA product was developed." *Id.* (internal citations omitted). Here, the parties agree that neither Delaware nor West Virginia has connections to the preparation of the ANDA or the development of the ANDA product. *See* D.I. 33 at 5; D.I. 39 at 27. Rather, these events primarily occurred in Minnesota. *See* D.I. 33 at 5. Therefore, I will treat this factor as neutral.

### 4.   The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor weighs in favor of transfer, but only slightly.  3M, as a multinational company incorporated in Delaware, can demonstrate "inconvenience" for § 1404(a) purposes only if it "prove[s] that litigating in Delaware would pose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (second alteration in original) (internal quotation marks and citation omitted); *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) ("[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient.").  Although 3M's size, financial resources, and status as a Delaware corporation would typically negate its assertion that it would be inconvenienced by having to litigate in Delaware, *see Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012), AstraZeneca has consented to the transfer of the claims against 3M to the Northern District of West Virginia should venue be improper in Delaware for Mylan.  D.I. 100 at 1.  Transferring AstraZeneca's claims against 3M to the Northern District will permit AstraZeneca to prosecute its claims against Defendants in one district, making the Northern District of West

21

Virginia convenient for all parties involved.  Thus, this factor weighs in favor of

transfer.  But given that both 3M and AstraZeneca Pharmaceuticals LP are

Delaware entities, thereby making Delaware not an inconvenient district for them

to litigate, I will give this factor only slight weight.

### 5.   The Convenience of Witnesses

The parties agree that this factor is neutral.  *See* D.I. 33 at 6; D.I. 39 at 29.

### 6.   Location of Books and Records

The parties agree that this factor is neutral.  *See* D.I. 33 at 6; D.I. 39 at 29.

### 7.   Enforceability of the Judgment

The parties agree that this factor is neutral.  *See* D.I. 33 at 6; D.I. 39 at 29.

### 8.   Practical Considerations

*Jumara* instructs me to give weight to "practical considerations that could

make the trial easy, expeditious, or inexpensive."  55 F.3d at 879.  This factor

weighs strongly in favor of transfer.  3M contends that "transfer would avoid

duplicative litigation in this District and eliminate the associated cost and

inconvenience of proceeding in both courts."  D.I. 33 at 7.  I agree.  Although a

case involving the same patents will continue to go forward in this Court, *see*

*AstraZeneca AB, et al. v. Teva Pharms. USA, Inc., et al.*, C.A. No. 18-1685-CFC,

3M has no relationship to the defendants, ANDA, or ANDA product at issue in

that case.  AstraZeneca's claims against 3M, however, involve the same ANDA and ANDA product as AstraZeneca's claims against Mylan.  Thus, judicial economy requires that AstraZeneca's claims against Mylan and 3M be decided together.  *See In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) ("Here, the most important factor is the avoidance of duplicative litigation: Adjudicating almost identical issues in separate fora would waste judicial resources.").

### 9. Relative Administrative Difficulty Due to Court Congestion

According to the most recent data provided by the Administrative Office of the United States Courts, 2,400 civil cases were filed in this District between July 1, 2018 and June 30, 2019.  *See* Admin. Office of the U.S. Courts, *Judicial Caseload Profiles*, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/06/30-1.  By comparison, 880 civil cases were filed in the Northern District of West Virginia for the same period.  *Id.*  The data also shows that as of June 30, 2019 there were 1,093 weighted filings per judge in this district as compared to 422 weighted filings per judge in the Northern District.  *Id.* Weighted filings "account for the different amounts of time district judges require to resolve various types of civil and criminal actions."  Admin. Office of the U.S. Courts, *Explanation of Selected Terms*,

23

https://www.uscourts.gov/sites/default/files/explanation-selected-terms-district-march-2012_0.pdf.  Cases that require substantially more judicial resources than the average civil case because of their complexity and scope receive a higher weight.  *Id.*  Given the districts' relative caseloads, this factor favors transfer.

### 10.  Local Interest in Deciding Local Controversies at Home

The parties agree that this factor is neutral.  *See* D.I. 33 at 7; D.I. 39 at 29.

### 11.  Public Policies of the Fora

Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts.  *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012).  This factor is relevant because both 3M and AstraZeneca Pharmaceuticals, LP are Delaware entities.  *See* D.I. 71, ¶¶ 3, 5.  3M has not cited any countervailing West Virginia policy.  Thus, this factor weighs against transfer, albeit only slightly.  *See Rosebud LMS, Inc. v. Salesforce.com, Inc.*, 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018) (affording this factor only minimal weight).

### 12.  Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

AstraZeneca's claims arise under federal patent laws.  Therefore, the familiarity of the respective districts with state law is not applicable and this factor is neutral.

* * * *

In sum, of the 12 *Jumara* factors, seven factors are neutral, one factor weighs against transfer, and four factors weigh in favor of transfer.  Having considered the factors in their totality, I find that 3M has demonstrated that the *Jumara* factors weigh strongly in favor of transfer, and therefore, I will grant 3M's motion to transfer to the Northern District of West Virginia.  As a result of my decision, 3M's motion to dismiss under Fed. R. Civ. P. 12(b)(7) for failure to join Mylan as a party under Fed. R. Civ. P. 19 is rendered moot.

## III.   CONCLUSION

For the reasons set forth above, I will deny Mylan's motion to dismiss for improper venue and will grant-in-part and deny-in-part 3M's motion to transfer or dismiss.  I will transfer the case in its entirety to the Northern District of West Virginia.

The Court will enter an order consistent with this Memorandum Opinion.

25