```
 1              UNITED STATES DISTRICT COURT

 2           NORTHERN DISTRICT OF WEST VIRGINIA

 3   AstraZeneca AB and
     AstraZeneca Pharmaceuticals, LP
 4

 5         Plaintiffs/Counter-Defendants,

 6              vs.                        CIVIL ACTION NO.

 7                                         1:18-cv-193

 8                                         1:19-cv-203

 9   Mylan Pharmaceuticals, Inc.,
     and 3M Company, and
10   Kindeva Drug Delivery, L.P.,

11         Defendants/Counter-Claimants.

12                       - - -

13       Proceedings had in the telephonic status conference of the

14   above-styled action on March 22, 2022, before Honorable Irene

15   M. Keeley, District Judge.

16                       - - -

17       APPEARANCES:

18       On behalf of AstraZeneca:

19       David I. Berl
         Williams & Connolly, LLP
20       725 Twelfth St., N.W.
         Washington, D.C.   20005
21       202.434.5963

22       Sandra K. Law
         Schrader, Companion, Duff & Law, PLLC
23       401 Main Street
         Wheeling, WV  26003
24       304.233.3390

25
```

1    On behalf of AstraZeneca, continued:

2        Gary M. Rubman
         Covington & Burling, LLP
3        850 Tenth Street NW
         Washington, D.C.  20001
4        202.486.8181

5        On behalf of Mylan Pharmaceuticals:

6        David L. Anstaett
         Michael R. Laing
7        Perkins Coie, LLP
         53 East Main Street, Suite 201
8        Madison, WI  53703
         608.663.5408
9
         Shannon M. Bloodworth
10       Brandon M. White
         Maria A. Stubbings
11       Perkins Coie, LLP
         700 13th Street, N.W., Suite 600
12       Washington, D.C.  20005
         202.654.6204
13
         Gordon Copland
14       William J. O'Brien
         Steptoe & Johnson
15       400 White Oaks Boulevard
         Bridgeport, WV  26330
16       304.933.8181

17       ALSO ATTENDING:  Christopher Carlton, Senior Counsel,
AstraZeneca
18

19       Proceedings recorded utilizing realtime translation.
         Transcript produced by computer-aided transcription.
20

21

22

23

24

25

1                          Tuesday Afternoon Session,

2                          March 22, 2022, 1:00 p.m.

3                          - - -

4           THE COURT:  Good afternoon.  This is Judge Keeley,

5    and I'm advised that we have counsel for the parties on the

6    line, and so I'll begin by calling the case.

7           This is AstraZeneca AB, et al., versus Mylan, et al.,

8    1:18-CV-193, which is the lead case, and 1:19-CV-203.

9           The purpose of today's call is to discuss the

10   parties' status reports outlining their positions on the scope

11   of the case on remand and to take up other matters that may

12   arise.

13          Would counsel, beginning with AstraZeneca's counsel,

14   please note your appearance.

15          MS. LAW:  Yes.  This is Sandra Law as local counsel

16   for AstraZeneca.  Also here is David Berl and Gary Rubman.

17          THE COURT:  All right.  Good afternoon to all of you.

18   I just wanted to find out -- excuse me, Mr. Copland.  Is Chris

19   Carlton on the line for AstraZeneca?  We were advised he would

20   be.

21          MR. BERL:  Yes, Your Honor, he is on the line.

22          THE COURT:  Mr. Copland.

23          MR. COPLAND:  Thank you, Your Honor.  I am, of

24   course, representing the defendants, as is William O'Brien,

25   also counsel of record, and on the line are Shannon Bloodworth,

1    David Anstaett, Brandon White, Maria Stubbings, and Michael

2    Laing of the Perkins Coie firm.  Also attending but not

3    appearing are in-house counsel for Mylan.

4            THE COURT:  Mr. Copland, I know the court reporter

5    will ask me to advise you that we could barely hear you, and if

6    that's going to be the case with other counsel from Mylan,

7    that's going to be an issue, so let me -- let me just hear,

8    Ms. Bloodworth, can I hear your voice, please, to see if it's

9    going to be satisfactory?

10           MS. BLOODWORTH:  Yes, Your Honor.  This is Shannon

11   Bloodworth for Mylan and Kindeva.

12           THE COURT:  That's fine.  And who's going to be

13   arguing, either in whole or in part, for Mylan, so I can

14   determine if other voices are going to be strong enough on the

15   call?

16           MS. BLOODWORTH:  I think myself and Mr. Anstaett will

17   be speaking, so Dave, over to you.

18           THE COURT:  Together on the same phone?

19           MR. ANSTAETT:  We are not on the same phone, Your

20   Honor.  This is David Anstaett on behalf of defendants.

21           THE COURT:  Thank you.  I can hear you.

22           And then for AstraZeneca, Mr. Berl, who will be

23   arguing for AstraZeneca?  And I just want to make sure that I

24   can hear your voices and that the court reporter will be able

25   to as well.

```
 1           MR. BERL:  Yes, Your Honor, this is David Berl, and
 2    I'll be arguing for AstraZeneca.
 3           THE COURT:  All right.  So we can hear you, but it's
 4    a little muffled, not as clear as you might want it to be.  I
 5    don't know if that's the consequence of a speakerphone, but --
 6           MR. BERL:  What about now, Your Honor?  Is that
 7    better?
 8           THE COURT:  That's better.
 9           MR. BERL:  Great.  Thank you.
10           THE COURT:  And I won't want to interrupt, but if I
11    think you are blurred or fading out, you know I'll have to do
12    that because, as you know, we need the record.
13           MR. BERL:  Of course.
14           THE COURT:  And obviously you want me to hear it,
15    too, and it may be a consequence of our federal Cisco phone in
16    here.  You know, it's our conference phone.  It may be that
17    you're fine and it's my phone, but whatever it is, we need to
18    make sure.  Thank you.
19           May I hear from each side as to how you think we
20    ought to approach the issues this afternoon.  So Mr. Berl, I'll
21    start with you and then turn it over to Mylan's counsel after I
22    hear what AstraZeneca's position on how we should approach this
23    afternoon's issues is.
24           MR. BERL:  Yes, Your Honor.  Thank you very much.
25    David Berl again from AstraZeneca.
```

1          As Your Honor knows, we filed on March 8th a motion

2   for temporary restraining order and preliminary injunction to

3   prevent Mylan from commercializing its products until trial in

4   this case can occur.  Yesterday Mylan filed an opposition to

5   that motion for preliminary injunction addressing each of the

6   issues that we had included in our motion.

7          As to one issue, that is, infringement of the '137

8   patent, Mylan indicated that it was providing a partial

9   response, and in the event that its motion to strike

10  Dr. Berkland's report were denied, it would seek to provide

11  additional information, presumably an expert report.  We're

12  addressing that issue in additional briefing as well.

13         That's where we stand with respect to the preliminary

14  injunction papers, and also there's the attendant motion to

15  strike that Mylan filed and that we filed an opposition to that

16  motion yesterday afternoon.

17         I think those are the two issues, and more generally

18  I think the issue of the scheduling of further proceedings,

19  including trial, is on the table, and how and whether to

20  conduct preliminary injunction proceedings in advance of trial

21  is likewise on the table per the parties' submissions to the

22  Court.

23         THE COURT:  All right.  So I understand that's what's

24  on the table.  Your preference is to take up the motion to

25  strike first?

1          MR. BERL:  I think that would be a logical place to

2    start.

3          THE COURT:  Okay.  Is Mylan in agreement with that?

4          MR. ANSTAETT:  Yes, Your Honor.  This is David

5    Anstaett on behalf of defendants.  We would be happy to take up

6    the motion to strike first, because it certainly does have the

7    possibility of limiting the scope of the preliminary injunction

8    papers.

9          THE COURT:  All right.  Then in order to do that, do

10   I need to hear from both sides in any further detail then as

11   you briefed it about the scope of the case on remand, or is

12   what you've laid out in your brief what you needed to tell me?

13         MR. BERL:  Yes.  I think that's true, Your Honor.

14   There are a few sort of late-breaking issues, and we made

15   reference to this in both our preliminary injunction papers as

16   well as in yesterday's opposition to the motion to strike

17   relating to a new patent that we expect to issue next month.  I

18   just want to make sure Your Honor is aware of that so that as

19   Your Honor schedules further proceedings and considers the

20   issues, Your Honor is aware of that so that there's no

21   suggestion or understanding that we somehow were not up front

22   about what was about to happen.

23         THE COURT:  All right.  Why don't you give me your

24   perspective on that to make sure that I do understand what

25   you've told me.

1            MR. BERL:  Of course, Your Honor.

2            So we received from the patent office a notice of

3    allowance of various claims.  And per the usual procedure at

4    the patent office, there is approximately five or six weeks

5    between the notice of allowance and the issuance of a patent.

6    The initial notice of allowance occurred, I believe, on March

7    3rd, and so we expect the patent to issue sometime in April.

8    It happens on a Tuesday, so it could be April 12th, it could be

9    April 19th, but sometime around that.

10           That patent that will issue next month addresses the

11   exact same claim limitations that Your Honor already considered

12   and that the Federal Circuit considered.  That is the

13   combination of all these ingredients like PVP K25 and PEG 1000

14   and HFA 227 and budesonide and formoterol in a single

15   formulation.  And it includes those limitations that Your Honor

16   found to be a nonobvious set of ingredients and a nonobvious

17   combination as affirmed by the Federal Circuit.

18           That patent does not include a limitation to 0.001

19   percent, which, as Your Honor knows, is the subject of Mylan's

20   noninfringement defense.  It broadens that range out to include

21   from triple 05 percent to, I believe, .05 percent PVP, and

22   xxxxxxxxx xxx xxxxxxxxxxxxxx xxxxxxx xxxx xxxxx xxx xxxxxx xxx

23   xxxx xx. xxxxxxxx'x xxxxxx xxxxxxxxx xx xxx xxxxxxxx xx xxx xxx

24   xxxxxx, xxxxxxx xxx xxxxx xxxxxxx xxxxxxx xxxxxxxxx xxxx xxx

25   xxxxxx and doesn't have a limitation to .001 percent as the

1  Federal Circuit construed that term with two significant

2  digits.

3       In addition, that new patent does not require in the

4  claim that the formulations be stable, and that limitation of

5  stability is one that Mylan has fastened on in connection with

6  the '247 patent that is the subject of the remand proceedings,

7  asserting that that limitation about stability creates various

8  problems under Section 112 like indefiniteness and lack of

9  written description and enablement.  Obviously, we disagree

10  that there are problems, but any such problems or any such

11  arguments are removed by virtue of the new patent issuance.

12       So in our view, Your Honor, this new patent sort of

13  resolves the remaining issues.  We don't think Mylan really has

14  any tenable defense to this new patent to advance, and

15  therefore, in our view, the issue here is essentially what

16  happens between now and the issuance of this new patent on

17  either April 12th or April 19th or some date around that.

18       Will Mylan be able to threaten to launch its product

19  before then in those intervening weeks, or will the status quo

20  be maintained until that new patent issues and the parties can

21  resolve their disputes either at a preliminary injunction

22  motion or we think preferably at a trial to be scheduled as

23  soon as possible to resolve the remaining disputes on remand.

24  So that's sort of how we see the issues and how we see the

25  issuance of the new patent playing into those issues on remand.

 1            THE COURT:  All right.  Thank you.  Mylan's position

 2    on that scope of remand.

 3            MR. ANSTAETT:  Thank you, Your Honor.  This is David

 4    Anstaett on behalf of defendants.

 5            As the Court may have predicted, I disagree with, I

 6    think, literally everything that just came out of my friend on

 7    the other side's mouth.

 8            He is referring to a patent that has not yet issued.

 9    How a patent that has not yet issued from the patent office can

10    impact a pending temporary restraining order and PI proceeding

11    is utterly and totally unclear.  The short answer is it

12    doesn't.

13            I heard a lot of attorney argument in the form of

14    expert testimony about how there can be no invalidity challenge

15    to this as-yet-to-be-issued patent, even though, as my friend

16    on the other side admitted, it is a materially different patent

17    than the ones that were tried previously, with a materially

18    different PVP concentration and a different prosecution

19    history.

20            AstraZeneca's problem is that this is a different

21    patent.  This patent -- it's not even a patent yet.  It hasn't

22    even issued from the patent office, and it won't, according to

23    AstraZeneca, for at least another month.

24            The problem for them is how could they possibly,

25    possibly get this into this case at this point.  They can't.

1   They would have to move for leave to amend their complaint at

2   this point.  They would have to get the Court's permission to

3   do that, and that would set off an entire discovery period on

4   the scope of this patent, its prosecution history, the validity

5   of the materially different PVP concentrations in this patent,

6   and so to suggest that this is a simple matter of waiting a

7   month for AstraZeneca then to assert this patent against us is,

8   in our view, preposterous.

9          These -- patents don't just pop out of the patent

10  office unanticipated.  If AstraZeneca -- not if.  AstraZeneca

11  obviously had knowledge that they were prosecuting this patent

12  in the PTO, and the fact that they never disclosed that to this

13  Court, that they intended to bring it into this case, I just --

14  I'm almost at a loss for words to describe that.

15         Another important thing to appreciate, Your Honor,

16  about this patent is that it is -- has the same priority date

17  as all the other patents, which means that even if it does

18  issue next month, it will then expire in a matter of months.

19  And so that AstraZeneca would suffer any irreparable harm as a

20  result of a theoretical argument that we might infringe a valid

21  patent that hasn't issued yet is again preposterous.  We are

22  talking about a patent that will have a life of literally a

23  matter of months.

24         They'll have to bring a new case if they want to

25  assert this.  And in that case they will not get a three-month

12

```
1    stay, because it will be late listed in the Orange Book, if

2    they even manage to get it listed in the Orange Book.  So this

3    has no bearing on these proceedings.  It is conjectural.  It is

4    speculative, and we absolutely oppose the notion that this is

5    going to come into this case or PI proceedings or proceedings

6    on the merit, and they haven't made any showing that it could.

7              And furthermore, if AstraZeneca views this new,

8    yet-to-be-issued patent as an ironclad barrier to a potential

9    Mylan launch of its product, then it doesn't need a preliminary

10   injunction, and so I'll stop there to see if the Court has

11   questions, but we absolutely oppose and disagree again with

12   what my friend on the other side said.

13             THE COURT:  Well, let me ask Mr. Berl a question.

14             Unless I missed it in your argument Mr. Berl, I

15   didn't understand that you were asking me for permission to

16   amend your complaint or to somehow inject this new patent that

17   you expect to issue in April into the claims of this case, but

18   are you?

19             MR. BERL:  I am not, Your Honor.  I did not say that.

20   Correct.

21             THE COURT:  Okay.  What is the purpose of this

22   argument?

23             MR. BERL:  So I want to be totally up front here

24   about what we expect to happen.  In the event that Mylan is not

25   either enjoined as of the time that that patent is issued, or
```

1    has agreed to stay off the market as of the time that that

2    patent issues -- and again, the issue fee has been paid and it

3    will be a matter of weeks before that patent issues -- then our

4    present intention is to file a new complaint asserting that

5    patent, and we would file a motion for preliminary injunction

6    in connection with that patent immediately.

7              And so I don't want Your Honor to be surprised or

8    misled when we have another preliminary injunction motion that

9    we would file maybe even on April 12th, about three weeks from

10   now, and so I think that's obviously relevant to how the

11   parties proceed and how the scheduling will work.

12             I should say that Mr. Anstaett said at the end that

13   we don't need a preliminary injunction because this patent is

14   so ironclad, and it's worth noting that Mylan's own executives

15   have repeatedly stated in the last couple weeks that they don't

16   intend to launch until 2023.  And the point is that we

17   shouldn't have to take that risk of them threatening to launch,

18   and that's why we think a preliminary injunction is warranted

19   and necessary, notwithstanding the fact that we think it's

20   very, very unlikely that, in the face of this new patent or

21   even in the face of the existing patent, that Mylan would

22   launch.

23             Mylan has never said it would launch.  We've asked

24   them.  They haven't responded.  Mylan has said that it's been

25   approved by FDA, and we understand that to be the case, but we

1    do not have any reason to believe that Mylan, in fact, will

2    launch.

3              And so the way we see this is that the parties and

4    the Court are expending enormous resources to adjudicate a

5    theoretical academic question of whether Mylan could launch,

6    even though Mylan hasn't said that it will launch, and the

7    Court may have to entertain one or even two preliminary

8    injunction proceedings followed by a trial on duplicative

9    issues.

10             And we think there's sort of a simpler and easier

11   course here, and that is to try to get this case to trial as

12   quickly as possible and have Mylan preserve the status quo

13   until the Court can actually address these issues on a full

14   record within a few months.  That's how we think the case

15   should proceed.  We think that's most efficient and so that's

16   our view.

17             THE COURT:  Excuse me just a minute, Mr. Anstaett.

18             Mr. Berl, that was just a little vague for me in

19   terms of understanding how you perceive this schedule to be

20   from your theory-of-the-case perspective.  Tell me again when

21   you think this case should try and what should be included in

22   it?

23             MR. BERL:  So, Your Honor, at the first

24   teleconference we had, I think back in January, early January,

25   Your Honor had indicated that there may be some availability in

1  Your Honor's schedule during the first week of June.  I don't

2  know whether that remains the case or not.  If it does, we

3  think that the case would be prepared to be tried during the

4  first week of June, and that schedule would accommodate any

5  further discovery necessary with respect to Dr. Berkland's

6  report and we could move forward and try the issues as they

7  relate to the '137 patent as well as the '247 patent.

8           We don't think there are any different issues that

9  are of any real significance with respect to the new patent.

10  We think that the new patent could be tried at the same time.

11  There are already reports that address virtually every

12  limitation in those claims.

13           If there needs to be some short supplemental report

14  on the issue, we think that can be accommodated over the next

15  couple months, and rather than engaging in duplicative

16  emergency proceedings, the parties can prepare this case to try

17  it to Your Honor in the beginning of June.

18           THE COURT:  That's what I thought you said.  All

19  right.

20           Now I'll hear from you, Mr. Anstaett.

21           MR. ANSTAETT:  I have a number of points to make in

22  response to that.  As far as statements from Mylan management,

23  Mr. Berl and AstraZeneca simply selectively quote those.  This

24  is from February -- this is from February 28th of 2022, an

25  investor call, so while we have not included Symbicort court in

1    our 2022 financial guidance, we are happy with the progress on

2    the product and will remain ready to launch if the opportunity

3    presents itself in 2022.  So that notion that Mr. Berl just

4    told you about is false.

5              Sure, for AstraZeneca I imagine they do think it

6    would be simpler and easier to simply keep us off the market

7    until this Court holds a trial in June, and then whatever

8    period of time expires after June when the Court will obviously

9    need time to issue an opinion, what that is another way of

10   saying is simply enjoin Mylan and keep them off the market

11   because it would be simpler and easier for us.

12             That's not something they can just ask for.  That is

13   an extraordinary remedy that they have the burden of showing.

14   And, of course, we've laid out those burdens and the arguments

15   on that in our preliminary injunction papers.

16             The new patent can be addressed in the June trial,

17   again, that is preposterous.  This is a patent that hasn't even

18   issued yet.  First of all, AstraZeneca apparently wants us to

19   address the tardy infringement report, literal infringement

20   report, of Dr. Berkland that it never submitted on time, and

21   we'll talk about that hopefully with respect to the motion to

22   strike.

23             So we're going to do new expert reports on that

24   literal infringement theory, expert depositions, more fact

25   discovery.  The Court will have to do claim construction with

 1   respect to that, there will be a *Daubert* motion, and now we add

 2   an entirely new patent to the case according to AstraZeneca, at

 3   some point in April, when they file a new lawsuit.  So they'll

 4   file a new lawsuit in April and take it to trial in June.  I've

 5   never heard of such a thing.

 6          The notion that all the previous discovery can just

 7   be used with this new patent is false.  It can't be.  There are

 8   new claims.  If the claims were identical to the previously

 9   issued patents, they would have been rejected for double

10   patenting and they would not issue.  Of course there are

11   different claims.  And so this notion that this is all going to

12   happen first in the context of their pending preliminary

13   injunction motion and then before a trial in June we think is

14   preposterous.

15          As to the notion that there will have to be two

16   injunction proceedings, AstraZeneca has a massive irreparable

17   harm problem, Your Honor.  As we explained in our brief, they

18   have already genericized the Symbicort market by launching

19   their own authorized generic.  They have done that already.

20   Their patents are set to expire in a matter of months.  The

21   case law is virtually uniform that when you have a potential

22   damages period over an incredibly short amount of time, the

23   harm is not irreparable.

24          So if this Court were to determine, for example, in

25   the current injunction proceeding, that AstraZeneca will not

 1   suffer irreparable harm if Mylan launches at some point between

 2   now and when those patents expire, then there is no second

 3   injunction proceeding, whether they get a new patent or not.

 4           So again, the ask here that they are making is

 5   incredible, and the prejudice that it would inflict on

 6   defendants who have spent years and xxxx xx xxxxxxxx xx xxxxxxx

 7   developing their generic products, which are finally approved

 8   by the FDA, would be extraordinary.  And AstraZeneca cannot

 9   show that it's entitled to that kind of extraordinary relief.

10           MR. BERL:  Your Honor, if I could respond --

11           THE COURT:  You may respond briefly.  Go ahead.

12           MR. BERL:  Very briefly, Your Honor.

13           I still didn't hear from Mr. Anstaett that Mylan

14   intends to launch its product.  And so it remains the case that

15   Mylan is asking the parties and Court to undertake an academic

16   exercise so it can try to threaten AstraZeneca with launching a

17   product that it doesn't intend to launch.

18           And I'll save the argument on irreparable harm for

19   the day that we argue, if at all, the issue of the preliminary

20   injunction, but suffice it to say that I completely disagree.

21   The patent does not expire in a matter of months.  It expires

22   in the middle of 2023, in July of 2023.  And more

23   fundamentally, we showed irreparable harm and will show

24   irreparable harm.

25           What we are trying to do is get to a point of

1    certainty, which is what the parties should want, and the

2    fastest way to get certainty is to have a trial.  If Mylan

3    wins, they're allowed to launch the product.  If not, they're

4    not allowed to launch the product.  Preliminary injunction

5    proceedings won't create any certainty, because either way

6    there'll still be a trial looming at which the final decision

7    will be rendered.

8         And as for his point that it would be prejudicial to

9    Mylan somehow to wait for adjudication on a full record until

10   June, which I think is only a few months away, to address that

11   possible prejudice we would be willing to post a bond to

12   compensate Mylan for any time that it was improperly left off

13   the market that it would have commercialized its product as a

14   result of any decision that would set the trial and make this

15   happen.  And so that would redress, I think, any of the

16   potential harm and prejudice that Mr. Anstaett referenced.

17        THE COURT:  You know, briefly, but I'm aware that

18   we've launched ourselves off into a world of preliminary

19   injunction factors that really isn't relevant to me today in

20   the lineup of issues that I have to decide.  It may become

21   relevant at some point, but I don't think right now it is, but

22   you can briefly respond to that, Mr. Anstaett, with that

23   understanding.

24        MR. ANSTAETT:  Thank you, Your Honor.  I will just

25   briefly respond.

 1              This notion that I didn't say that we will launch, I

 2     think, as we have explained to Your Honor, there is a

 3     competitive harm there.  Of course AstraZeneca wants to know

 4     when we will launch, because they have an authorized generic on

 5     the market and they can take actions to restructure the market

 6     if they know precisely when we will launch, and that's why we

 7     have had in camera communications with the Court about that.

 8              And so the notion that we are somehow obligated to

 9     tell Mr. Berl when that's going to happen is flatly false.  The

10     bond doesn't solve the problem for precisely that reason,

11     because of the actions that AstraZeneca can take in the market

12     while we would be held off the market and enjoined to

13     restructure it and lock up long-term contracts and exercise its

14     authorized generic in the market.

15              And finally, the last thing I'll say is this notion

16     that, again, we should just wait until June, that's granting a

17     de facto PI to AstraZeneca without them having to meet the

18     formidable burden that they have to obtain that kind of relief.

19              So with that, I will not say anything further, Your

20     Honor.

21              THE COURT:  All right.  Thank you.

22              And Mr. Berl, one fact question.  Was Mr. Anstaett

23     correct in telling me that the priority date for this new

24     patent that you expect to launch next -- or not to launch, but

25     you expect to issue next month is the same as the patents in

1   prosecution?

2          MR. BERL:  It is the same.  It is the same.  It would

3   expire in July of 2023, and it's an identical patent, same

4   specification, exact same claims, other than it doesn't have

5   001 like the claims Your Honor tried.  Instead, it has a

6   broader PVP range that includes 001 and xxxxx'x xxxxxxxxxx.

7          THE COURT:  Okay.  All right.  So now I think the

8   question before me that we should turn to is whether

9   AstraZeneca's xxxxxxxxxxx theory in Dr. Berkland's supplemental

10  report is within the scope of the case on remand, and that's a

11  decision that I would like to make today.  I've read your

12  briefs, and if we can, we could just launch right into a

13  discussion of these issues.  Is there any objection?

14         MR. ANSTAETT:  No objection from us, Your Honor.

15         MR. BERL:  Nor from us, Your Honor.

16         THE COURT:  All right.  Now, obviously, I have a

17  tremendous amount of discretion with regard to this, but I

18  think what would inform my judgment and help me make the

19  decision is how I should view this theory and when it was

20  introduced in discovery, because from my review of the record,

21  you know, this case came up -- was filed in Delaware and then

22  ultimately your portion of it came to trial here, but my

23  understanding is that the parties ultimately agreed to give the

24  term its plain and ordinary meaning and that no construction of

25  that term was necessary.  And that occurred in Delaware,

 1   correct?

 2           MR. BERL:  Yes, Your Honor.

 3           THE COURT:  All right.  So after the case was

 4   transferred to this district, as I recall, Mylan filed a

 5   partial motion for summary judgment in which it relied on its

 6   proposed claim construction of 0.001 PVP with two significant

 7   digits, and AstraZeneca requested a status conference to

 8   discuss claim construction of 0.001 PVP.

 9           Everybody with me so far?  Are the facts the same for

10   both sides?

11           MR. BERL:  Yes, Your Honor.

12           MR. ANSTAETT:  I think that's right, Your Honor.  I

13   think the parties jointly requested a hearing on that when the

14   dispute arose, and then as Your Honor may come on to, that's

15   when we first received -- after that is when we first received

16   a new literal infringement report from Dr. Berkland.

17           THE COURT:  All right.  On July 13th of 2020, I held

18   that status conference, and that's when AstraZeneca asserted to

19   me that the defendants had waived their proposed claim

20   construction when, in Delaware, they adopted the plain and

21   ordinary meaning of 0.001 PVP in lieu of their two significant

22   digit construction.  At least that was AstraZeneca's argument.

23           It also argued that it hadn't produced an expert

24   report on literal infringement under that proposed claim

25   construction because it had understood the defendants to have

1   waived this construction.

2           Mylan contended that AstraZeneca was feigning

3   ignorance of the proposed -- Mylan's proposed claim

4   construction.

5           At that hearing I ultimately rejected AstraZeneca's

6   argument that the defendants had waived their proposed claim

7   construction and I ordered the parties to submit claim

8   construction briefs.  Everybody in agreement?

9           MR. ANSTAETT:  Yes, Your Honor.

10          MR. BERL:  Yes, Your Honor.

11          THE COURT:  All right.  So then between July 20th and

12  July 27th, the parties exchanged emails in which AstraZeneca

13  informed Mylan that it wished to submit an expert report

14  containing an additional literal infringement theory, the

15  so-called xxxxxxxxxxx theory that's under review today, right?

16  Everybody agree?

17          MR. BERL:  Yes, Your Honor.

18          THE COURT:  Okay.  Mylan rejected that proposal as

19  untimely, and AstraZeneca then provided Mylan with a copy of

20  the proposed supplemental report of Dr. Berkland, and Mylan

21  sought an emergency status conference with me regarding the

22  admissibility of that supplemental report.

23          And at that time that I held the hearing on August

24  4th of 2020, that report had never been filed.  The defendants

25  asserted that supplemental report was untimely and actually not

1  a true supplement because it was expounding a whole new

2  opinion.  And AstraZeneca countered that the defendants had

3  waived their proposed construction and -- at least AstraZeneca

4  has been led to believe that they had waived it and that it had

5  not had an opportunity to develop this new theory during

6  discovery because of that misapprehension.

7           And then, because I adopted AstraZeneca's proposed

8  claim construction, the parties stipulated to infringement and

9  the issue of the supplemental Berkland report and underdosing

10  theory became a moot point.  Does everyone agree?

11           MR. BERL:  Yes, Your Honor.

12           MR. ANSTAETT:  Yes, Your Honor.

13           THE COURT:  All right.  So then the question is

14  whether I should allow the parties to reopen discovery on

15  remand to take up this new expert opinion.  And the questions

16  before me are how is this going to prejudice either side, and

17  is it going to delay a resolution of the case, and how

18  probative is the evidence in the face of what could be

19  described as a lack of diligence, and is there any prejudice --

20  if there's prejudice to both sides, which side has the better

21  argument with regard to how unfair that prejudice is.

22           So what the Federal Circuit said, I think, is very

23  important, and I'm quoting:  In accordance with the judgment of

24  this Court entered December 8th, 2021, and pursuant to Rule 41

25  of the Federal Rules of Appellate Procedure, the formal mandate

1  is hereby issued, but the opinion stated, quote, "We construe

2  0.001 percent as that precise number, with only minor

3  variations, that is, 0.00095 percent to 0.00104 percent.  We

4  therefore vacate the stipulated judgment of infringement and

5  remand for the district court to find in the first instance

6  whether Mylan's ANDA product infringes the asserted claims

7  under the proper claim construction."

8          And so what we're looking to, therefore --

9          MR. BERL:  Your Honor --

10          THE COURT:  Go ahead.  I'm --

11          MR. BERL:  I'm very sorry, Your Honor.  This is David

12  Berl.  I really apologize.  We somehow got disconnected from

13  the call.  I don't know how that happened.  But I missed,

14  unfortunately, the last probably 90 seconds of what was done or

15  said.

16          THE COURT:  Well, I was -- if you will just look at

17  the mandate from the Federal Circuit, I was quoting that.

18          MR. BERL:  Okay.

19          THE COURT:  So what I'm saying now is in light of

20  that mandate, infringement, in my view, is the subject of the

21  remand, but whether AstraZeneca's xxxxxxxxxxx theory should

22  come into the case and discovery be reopened is within my

23  discretion in light of that mandate.

24          And I take it as telling that AstraZeneca -- at the

25  time that the parties stipulated to infringement, AstraZeneca

1   hadn't moved to file Berkland's supplemental report out of

2   time.  It was clearly out of time, as I believe I've stated

3   before, and I don't believe AstraZeneca is disputing that it

4   never filed the report.

5           Is that correct, Mr. Berl?

6           MR. BERL:  That's correct, Your Honor.

7           THE COURT:  Okay.  So we now, I think, have to

8   look -- just to move right through Rule 37 and then we're into

9   the Southern -- what I call the *Southern States* factors.  Do

10  you all agree that that's where this case goes for analysis?

11          MR. BERL:  Yes, Your Honor.

12          MR. ANSTAETT:  Yes, I think we can look at the

13  *Southern States* factors, Your Honor.

14          THE COURT:  All right.  So we start then with what I

15  did in the scheduling order.  And that scheduling order which,

16  as you know, was entered after long discussion with the parties

17  and taking into consideration all the dates that you had

18  preferred and suggested when agreement couldn't be reached and

19  I had to make the decision, the expert reports were due no

20  later than January 15th, 2020, and the expert discovery was to

21  close on August 10th, 2020.

22          So we go to July 18th, which is when AstraZeneca

23  first notified Mylan of its intent to serve what it called a

24  supplemental expert report.  And in my view, I agree with

25  AstraZeneca's argument that a supplemental expert report really

1   understates what the attempt is in that report, which had not

2   been previously disclosed, and it's not -- it's a whole new

3   opinion on xxxxxxxxxxx that had not been introduced into the

4   case previously.

5          So if we look at the first factor, surprise to the

6   defendants, I think that factor weighs in favor of excluding

7   the report.

8          The second factor is the defendants' ability to cure

9   surprise and disruption of the trial, which, in my view, based

10  on the arguments I've read, are intertwined arguments.

11  AstraZeneca argues it should be allowed to add its xxxxxxxxxxx

12  theory, which tellingly it concedes would require reopening

13  fact and expert discovery, and the argument is, well, we can do

14  this very quickly, Judge.  You don't have to worry about that,

15  even though we all recognize that that would be very

16  significant discovery.  It's a whole new opinion and we now

17  know that it will likely become intertwined with a patent that

18  is -- I'm told is likely to issue next month or to -- yeah, to

19  issue next month.

20         Mylan asserts that, in its view, in light of this

21  opinion, additional claim construction would be necessary.

22  Now, I haven't scheduled a trial date yet.  That was to be done

23  today, but there's no one on this call who understands that

24  that trial -- it would be any later than June.  And it's now

25  March, the end of March.  So to argue to me that reopening fact

1    and expert discovery and to do claim construction and to have a

2    trial on the issues that were remanded as well as this new

3    theory could all be done in March or April or even June is, I

4    believe -- I don't want to say it's misleading, but it probably

5    is, but at best, it's very Pollyanic.  I'll leave it there.

6           And I know the case needs to be tried.  There are

7    compelling reasons why the case needs to be tried, whether it's

8    got the xxxxxxxxxxx theory in it or it doesn't.  And so while I

9    see that there's prejudice to both sides if the theory is

10   included or it isn't included, in my opinion, even though the

11   prejudice to the defendants arguably could be cured through the

12   reopening of fact and expert discovery and they therefore would

13   not have the surprise that they had in July and early August of

14   2020, I find that they would be greatly prejudiced by the delay

15   caused by developing the xxxxxxxxxxx theory because of the fact

16   that they -- I think it's become plain on the record today that

17   they have received FDA approval, and will be in a position,

18   once these issues are determined, to launch or to determine

19   whether they shouldn't launch their ANDA product.

20          I know AstraZeneca's moved for a temporary

21   restraining order, a preliminary injunction to prevent the

22   launch.  But the proceedings to resolve that motion will have

23   an impact on the trial schedule, and to attempt to develop an

24   additional infringement theory simultaneously with that, in my

25   view, would unfairly prejudice not only the defendants but

1   would significantly impact this Court's resources and ability

2   to retry the case, as I've led you to understand, in either

3   April or June of this year.

4          So in light of all of that, and all the deadlines

5   that are necessary in this case, I find that those two factors

6   weigh in favor of exclusion.

7          Now, turning to the importance of the evidence, in my

8   opinion this factor weighs against exclusion, because

9   undoubtedly expert opinions on infringement are crucial to

10  AstraZeneca's case.  And evidence related to its xxxxxxxxxxx

11  theory are important literally, but particularly with the

12  Federal Circuit's instructions to the Court to adopt the

13  defendants' construction of the term 0.001 percent PVF.

14         The fourth factor is AstraZeneca's explanation for

15  its failure to disclose the underdosing theory.  And I think

16  this is a particularly important factor, because AstraZeneca

17  argues that the reason it didn't introduce its underdosing

18  theory earlier is because the defendants had misled it into

19  believing they had forfeited the claim construction, that they

20  had previously offered of 0.001 percent.

21         I find that this argument rings hollow.  The

22  defendants put AstraZeneca on notice of what they believed

23  would be -- should be the proper construction of 0.001 percent

24  in their paragraph four notice.  While the parties agree to

25  adopt the plain and ordinary meaning of that term, they never

1   defined that meaning with more specificity.  So I find that

2   AstraZeneca was not misled into believing that the defendants

3   no longer believed 0.001 percent should be read to include two

4   significant digits.

5          I also find that AstraZeneca's -- that Mylan's expert

6   report alluded to this claim construction, but Dr. Berkland's

7   reply report did not include opinions related to literal

8   infringement under the defendants' construction.  So add to

9   that that in July I rejected AstraZeneca's argument that the

10  defendants waived their proposed claim construction.  Renewing

11  it today does not make it any more persuasive to me, or I

12  should say renewing that argument today doesn't make it any

13  more persuasive to me.

14         The claim to have misunderstood the defendants'

15  position on their proposed claim construction is -- I don't

16  think is justified and does not -- certainly does not permit

17  base disclosure of the new infringement theory.  So that

18  factor, in my view, weighs in favor of excluding the new

19  opinion.

20         So while the xxxxxxxxxxx theory may be relevant, the

21  fact that AstraZeneca never properly presented this theory

22  while the case was pending before trial in a way that would

23  permit the parties to develop it pursuant to the schedule in

24  the case is telling, and permitting it to now develop it would

25  open the door to issues beyond the scope of the mandate, in

1    violation of the mandate's letter and spirit, in my opinion.

2             The *Southern States* factors, therefore, weigh in

3    favor of excluding this theory from the case, and I decline the

4    invitation to reopen discovery to develop the theory introduced

5    out of time that was never filed as part of the case before the

6    parties entered their infringement stipulation.

7             That's my ruling on that, which I think obviously

8    AstraZeneca objects to and that's noted for the record, but

9    granting the motion to strike AstraZeneca's xxxxxxxxxxx theory,

10   which is docket number 508, I think leads us now to schedule

11   the trial date as soon as we possibly can.

12            And in anticipation of a ruling either way, I assumed

13   that you all have looked at your calendars and are ready to

14   discuss with me the dates that I do have available.  Okay?

15            MR. ANSTAETT:  Yes, Your Honor.

16            THE COURT:  All right.  Now, we're looking whether I

17   have anything left in April, and we had talked at one point

18   about the fact that we might not be able to try this case in a

19   linear series of days but might have to jump around a bit.

20            I have the dates of April 18th through 22nd available

21   right now.  And those will be the best dates.  That's five

22   trial days.  I'd like to hear your availability.

23            MR. BERL:  Yes, Your Honor.  This is David Berl.  We

24   will make ourselves available for that.  To be honest, I think

25   especially given Your Honor's ruling, it's very unlikely that

1     five days of trial would be necessary.  I think substantially

2     less than that would be necessary.  And so it may make sense to

3     try to do it in the second half of that week.

4             Obviously, I haven't confirmed these dates with the

5     experts, and we will have to make sure they're available, but

6     we will do our best to make sure that happens.

7             THE COURT:  All right.  Well, as you know, I will --

8     maybe you don't, but I have indicated that in these patent

9     cases, because of the difficulty in procuring your witnesses'

10    physical presence here in Clarksburg, I'm more than willing to

11    continue to conduct the trial, in whole or in part, on Zoom so

12    that at least with regard to your expert witnesses you can have

13    those people from wherever they are for the period of time you

14    need them.  And I'm more than willing to continue to do that

15    also, if you just want to try the whole case that way.

16            The problem I have with Friday the 22nd is not

17    something I can't reschedule.  I've got issues on Friday the

18    22nd, but I can reschedule, so if you don't want to start on

19    Monday the 18th and would prefer Tuesday or Wednesday start, I

20    can do that for you.  But I don't want to make it less than

21    three days, Mr. Berl, unless you and Mr. Anstaett and your

22    whole team get together and let me know that.

23            I'm more than happy to hear back from you all if this

24    date works for both sides and you want to massage which days of

25    the week to use.

1          MR. BERL:  That's very appreciated, Your Honor.

2          THE COURT:  Sure.  I will tell you starting the 25th

3    of April I've got -- I'm in trial for the next two weeks, so --

4    no.  Actually, I'm out of town the week of the 25th and then in

5    trial for the next two weeks, so these dates are -- they're

6    important to put down on the calendar.

7          And to use these dates we're going to have to be

8    down -- if we're live, we're going to have to be in the

9    bankruptcy courtroom.  If we're on Zoom, we can do it -- I can

10   be there, but you don't have to worry about that.  But I don't

11   have the courtroom in the main courthouse available to me

12   that -- during any of that period of time again until June.

13         MR. ANSTAETT:  Your Honor, we -- I do have to inform

14   the Court that in anticipation of this we have been checking

15   availability of our experts, and when we last checked, which

16   was fairly recently, our main expert on invalidity of the '247

17   patent is unavailable from April 16th to 24.  We can recheck

18   that, but I am somewhat concerned that that will be an issue.

19   And as I say, I'm happy to recheck that, but I do want to be

20   very up front with the Court about that.

21         THE COURT:  Well, that's going to be your problem,

22   Mr. Anstaett, because we don't -- I don't have anything else

23   available until June, and if you all want a decision from me

24   before I retire on September 30th, the sooner we try this case

25   the better.  And if you all can work out to take him de bene

1   esse prior to trial and just submit his testimony that way, I'm

2   fine with that.

3              MR. ANSTAETT:  We will explore that, Your Honor.

4   Thank you very much for that.

5              MR. BERL:  Your Honor, this is David Berl again.

6   Obviously that schedule is very appreciated and we appreciate

7   Your Honor making time to try this case so expeditiously.  As

8   Your Honor knows, I have another trial between now and then,

9   and that's obviously my problem and I'll deal with that, but do

10  I understand Your Honor to be preserving the status quo, or the

11  status quo will be preserved pending that trial so that we

12  don't need to spend the intervening few weeks briefing and

13  presenting preliminary injunction issues and instead we can

14  just proceed straight to trial with the status quo maintained?

15             THE COURT:  Well, sounds like you're looking for an

16  advisory opinion from me on what I'd do on a PI.  I think

17  that's up to you two to decide, or your two sides to decide and

18  let me know.  If I have to jump in on a PI, I'm just going to

19  have to jump in on it, but I can't just tell you you're ordered

20  to preserve the status quo without going through what the

21  analysis must be.

22             MR. ANSTAETT:  Thank you, Your Honor.  We certainly

23  agree with that from our perspective.

24             THE COURT:  Okay.

25             MR. ANSTAETT:  Should make clear for the record we

1   agree with the analysis that you just stated, Your Honor, not

2   with what Mr. Berl said.

3          THE COURT:  What I would tell you all is that I'm in

4   trial the week of the 5th.  I have -- if you're anticipating

5   that we're going to need a PI -- and by the way, the way I read

6   the submission, you're not -- you were not looking for TRO,

7   because that would have been very time sensitive, and I did

8   consider this in the light of a preliminary injunction and

9   that's really the way you're considering it, correct?

10         MR. BERL:  Yes, Your Honor.  Well, I'm not sure if I

11  can say this on the line.

12         THE COURT:  Nothing's launched yet, so this is all

13  anticipatory.

14         MR. BERL:  Correct.  And it's our understanding that

15  we'll have some notice so that we won't wake up one morning

16  with our market wrecked without having an opportunity to come

17  before Your Honor and present our PI.

18         THE COURT:  I don't have that crystal ball, so if

19  you're looking for that assurance from your opposing counsel,

20  you all better have that conversation.  In light of the

21  developments in this case over the last couple of months, I

22  don't believe that it's appropriate for me to be part of those

23  discussions.

24         You all can let me know what your -- what factors

25  your clients consider and how they will resolve that or not,

```
 1   but otherwise I will simply tell you that during the week
 2   running up to the Easter holiday, although I have other
 3   matters, particularly one on the 13th involving Mylan in
 4   another case, I could do a remote hearing with you that week
 5   if -- and you'd have to let me know on a PI and you'd have to
 6   let me know how many witnesses you would have and how long it
 7   would take, okay?  But I think that would have to be by Zoom,
 8   if it's necessary.
 9              MR. ANSTAETT:  Understood, Your Honor.  And certainly
10   we think that's fine and we would not even necessarily need
11   witnesses in a PI hearing, if they want to have a hearing on
12   it.  It might be helpful -- as Mr. Berl said earlier, we have
13   filed our response papers on the PI before they were due in
14   order to kind of be prepared in the event we need to be.
15              I wonder if -- it might help if Mr. Berl could let us
16   know if AstraZeneca intends to file any reply submissions, and
17   if so, if we could set a -- an expedient deadline if there are
18   going to be any of those, just so we would be in a position,
19   everything would be ripe.
20              MR. BERL:  I think it won't surprise Your Honor to
21   hear that AstraZeneca does intend to submit reply papers.
22              THE COURT:  I'm sure you do.
23              Let me just, for your information, tell you that I am
24   not available in the next two weeks.  I have another trial and
25   there's nothing that is going to allow me, with a jury sitting,
```

1   to get into a midday hearing or status telephone call or

2   something like that, so the rest of this week is when I need to

3   hear back from you all about the schedule, both with regard to

4   the trial and taking witnesses out of time, and also your --

5   where you would like me to block out time for a PI, if

6   necessary.  And I think that time in April that I've suggested

7   I did have time works in a way, because it also relates to when

8   the new patent might issue.

9           So taking all of that into consideration, obviously

10  if there is going to be an issue for PI, then I need to know

11  sooner rather than later because of this trial schedule I have.

12          MR. BERL:  Absolutely, Your Honor.  We will engage in

13  discussions with Mr. Anstaett and Ms. Bloodworth and report

14  back.

15          THE COURT:  All right.  So then tentatively we've got

16  the week of April 18th through 22nd, likely not five days, but

17  you'll let me know, and likely Mylan is going to need to take

18  the testimony of -- its trial testimony of its main expert out

19  of time and use it during trial in a de bene esse fashion; is

20  that correct?

21          MR. ANSTAETT:  Your Honor, yes, we will certainly

22  explore that option.  And as I said, we will check schedules

23  again, but we will explore that option if there is still an

24  availability problem for sure.

25          THE COURT:  All right.  Well, the only other option I

1    can offer you is sometime at the beginning of June.  I don't

2    have a number of dates available, but I do have June 1 through

3    3, June 6 through 10, June 13 through 17.

4            MR. ANSTAETT:  And I know that our expert is

5    available in that early June window, the first June window --

6    the earliest that you mentioned, so we will take that under

7    consideration as well.

8            THE COURT:  All right.  I think it goes without

9    saying that I have -- maybe I should say it, I think I did say

10   it in another hearing.  I have another patent trial starting

11   May 23rd, and my decisions in these cases, you know, are

12   basically based on who got tried and when.  And if you don't go

13   in April, you're likely to be decided after that case.  I can't

14   do a Solomon-like split of my body and decide you all while I'm

15   deciding that, so take that into consideration.

16           MR. ANSTAETT:  Understood, Your Honor.

17           THE COURT:  Anything else we need to discuss today?

18           MR. BERL:  No, not from AstraZeneca, Your Honor.

19   Thank you for your time.

20           THE COURT:  You're welcome.

21           MR. ANSTAETT:  Not from Mylan, Your Honor, other than

22   for me to correct our statement that our expert is available

23   the week of June 5th, but as I said, we will check those

24   earlier dates and talk to Mr. Berl and get back to the Court

25   expeditiously.  And again, we thank the Court for its time

```
 1   today.

 2              THE COURT:  All right.  And once I know where -- what

 3   the schedule is going to look like based on your discussions,

 4   my law clerk will probably be in conversation with your -- both

 5   sides' local counsel just to figure out deadlines without the

 6   need to get into a last-minute scheduling conference or final

 7   pretrial.  I don't think we need to pretry this, based on the

 8   status of the case.  We know what's coming, right?

 9              MR. ANSTAETT:  I think that's right, Your Honor.

10              MR. BERL:  I'm not sure that's right, Your Honor.  I

11   think it depends on what Mylan intends to do and when with

12   respect to its defenses, but I think if it's possible, Your

13   Honor, if we can't reach agreement on things, that we can maybe

14   reach out to Your Honor and hope to at least present the issues

15   in writing before trial, if there are any pretrial issues that

16   would remain outstanding.

17              THE COURT:  All right.  We'll see.  I'll wait to hear

18   what develops, but thank you all very much.  Have a nice

19   afternoon.

20              (Proceedings concluded at 2:07 p.m.)

21

22

23

24

25
```

```
1                         CERTIFICATE

2        I, Cindy L. Knecht, Registered Professional Reporter and

3   Official Reporter of the United States District Court for the

4   Northern District of West Virginia, do hereby certify that the

5   foregoing is a true and correct transcript of the proceedings

6   had in the above-styled action on March 22, 2022, as reported

7   by me in stenotypy.

8        I certify that the transcript fees and format comply with

9   those prescribed by the Court and the Judicial Conference of

10  the United States.

11       Given under my hand this 28th day of March 2022.

12                    /s/Cindy L. Knecht
                      _____
13                    Cindy L. Knecht, RMR/CRR
                      Official reporter, United States
14                    District Court for the Northern
                      District of West Virginia
15

16

17

18

19

20

21

22

23

24

25
```